# Ferriday *v.* Selser.

Where a juror was a surety for one of the parties and the result of the verdict might affect the ability of the party to pay, he being insolvent, and the juror declared that he felt himself unfit to sit upon the trial, it was held to be a good cause for excluding him from the jury.

Where a juror was admitted into the box who ought to have been excluded for cause, but was then challenged peremptorily and rejected, it was held not to be error, the juror not having participated in the verdict.

The declarations of the grantor cannot be heard to impeach his own title after he has made a conveyance of it.

When the admission of improper evidence is assigned for error, the substance of it must appear in the record.

A trustee cannot by a release of his interest in a deed of trust, render himself a competent witness for his co-trustee, unless by the consent of the *cestui que* trust, or a decree of a court of equity.

Where the rejection of evidence is assigned for error, its materiality must be shown, or it will not affect the judgment below.

IN ERROR from the Circuit Court of the county of Yazoo.

This was a proceeding under the statute for the trial of the right of property.

Hiram Selser recovered judgment in the circuit court of said county against Geo. R. Carradine, H. F. Carradine and D. S. King, in May, 1838, for the sum of about eight thousand dollars. In the following September an execution from the judgment was levied upon twenty-five slaves, the property of G. R. Carradine. William Ferriday, the plaintiff in error, claimed the slaves as his property, and gave bond in pursuance of the statute, and took the slaves out of custody of the officer. At a subsequent term of the circuit court an issue was tendered by the defendant in error, the plaintiff in the execution, and a joinder by the claimant. A trial was had and verdict for the plaintiff in the execution, now the defendant in error.

[Ferriday *v.* Selser.]

Ferriday claimed the slaves as trustee, under a deed of trust executed to him and one R. M. Corwine, by G. 'R. Carradine and wife, previous to the date of the said judgment, to secure the payment of certain debts, mentioned in the deed.

It appeared from the bill of exceptions, that one Subblet, on being tendered as a juror, was asked on his *voir dire* if Carradine, the defendant in the execution, was not indebted to him, and if Carradine was not insolvent? to which he replied, that if Carradine was indebted to him, it was in a small amount, that Carradine was notoriously insolvent. That he, Subblet, felt himself unfit to sit upon the jury at the trial. It further appeared from his answers, that he was contingently liable for Carradine for the amount of a judgment on a forthcoming bond. Subblet was challenged for cause, but the court allowed him to be sworn in chief, and he was then peremptorily challenged, and another juror called in his place, and the opinion of the court excepted to.

One Yandell was called by the defendant below as a witness to prove the declarations of G. R. Carradine, made at any time, as to his intentions in making the deed of trust. The admission of this evidence was excepted to by plaintiff in error, but the bill of exceptions did not state what these declarations were, or that they were actually given to the jury. It only stated that the objection was overruled. The deed of trust recited, that it was executed to secure a debt which Carradine owed Corwine, one of the trustees, and to indemnify him from losses on account of his liability as surety for debts due from Carradine to other persons. Corwine was called as a witness by Ferriday, but previous to coming forward, Corwine released to Ferriday, his co-trustee, all his powers and rights as trustee, and his interest in the trust fund. But the court rejected his evidence as incompetent.

The claimant offered in evidence the record of certain judgments against Carradine in favor of one Eskridge and other persons. Upon three of the executions, a levy had been endorsed by the sheriff, of *levied* upon sufficient property, that the sheriff was enjoined from proceeding by William Ferriday *et al.* which levy was afterwards released by the attorney of the plaintiffs in the executions. Said executions were subsequently levied on the slaves in controversy, and under this levy, there was a waiver by

said Carradine, Ferriday, and Corwine, of notice of sale.   These records were rejected by the court, and exceptions taken to the decision.

It was also assigned for error, that the court below refused to permit the claimant to read in evidence certain forthcoming bonds, and bonds for writs of error against Carradine, which were recited in the deed of trust, with evidence to show that they were existing liabilities, and intended to be secured by the deed of trust, executed by Carradine to claimant and said Corwine as trustees.

The jury, in giving the verdict for the plaintiff in the execution, found that the deed of trust was invalid, and that the claim set up by the claimant, was for purposes of delay, and assessed the value of the negroes at $11,200, and the damages at $1,120.

The cause was brought to this court by writ of error.

Rucks & Wm. Yerger, for plaintiff in error.

This is an issue made up in the circuit court of Yazoo county, at the November term, 1838, to try the right of property under the act of 1822.   Rev. Code, 201, sec. 25.   1830, Laws of Mississippi, 342.

Selser, plaintiff below, had recovered a judgment on 14th May, 1838, *v.* George R. Carradine, Henry F. Carradine and Douglass S. King, for $8,031 99, upon which execution issued 15th August, and was levied 8th September following, upon the negroes in dispute.

Ferriday claimed them under a deed made 30th April, 1838, by George R. Carradine, and Elizabeth Anne, his wife, conveying them, with other property, to the said Ferriday and Richard M. Corwine, in trust, to pay debts as set forth in the deed.

The question was, whether the deed was fraudulent and void as to the creditor.

Six bills of exceptions were taken on the trial, which constitute the grounds of error in this court.

1. Sublett was offered as a juryman, and challenged for cause. He was sworn on his *voir dire*, and said, Carradine was notoriously insolvent, if indebted to him it was only in a small amount but that he felt himself unfit to sit upon the trial, because Carro

[Ferriday *v.* Selser.]

dine was the surety in a forth coming bond on a judgment against himself and another, he, Sublett, being a surety in that case, had refused to execute the bond, his principal being insolvent. The court decided he was a competent juror.

Every creditor of Carradine, not provided for in the deed, of course stood opposed to it. Sublett did not oppose it on account of any debt due to himself, but he did, on account of his connection with the judgment and forth coming bond. This shows his opinion was, that if the creditor failed to make the money upon an execution on that bond, that he himself would have to pay it, whereas if the deed was set aside, that execution might lay hold of the property. This was certainly his meaning—his language admits of no other construction. His opinion might have been wrong, but as he entertained it, he would have taken the box with it, and decided the cause with it; it placed him in direct hostility to the deed; and it is no argument to say that he was wrong, that he mistook the law and was not liable. If he thought himself liable, it would have had as much influence on him as if he had really been so. This is not like the case of a witness under an erroneous impression of his liability,—he may be set right, cross examined, his evidence criticized, heard with grains of allowance, or thrown entirely out as unworthy of credit. But who will set the juror right, or diminish the weight of his judgment on the trial? Besides the rule has been relaxed as to witnesses; they were once excluded on this ground, but in Wood *v.* Stoddart, 2 John., 194, the court say the relaxation of the rule as to questions of interest, has never been extended to jurors, they must be *omni exceptione majores,* free from every objection and wholly disinterested. Stainbach *v.* Insurance Company, 2 Cains, 133; Bank *v.* Smith, 19 John. 121; 3 Bac. A. 756; Coke Lit. (Thomas.) 3 vol. 500, 520.

Trial by jury would not long deserve the high estimation placed upon it in England and America, if interested and prejudiced individuals are permitted to take their seats in the box; it would soon sink into contempt and deserve the execration of every good man. The courts cannot err on the other hand, by empanneling men who are perfectly impartial as they stand unsworn. Justice

43*

will then be administered in its purity, and trial by jury may answer the great ends so sanguinely anticipated by its friends.

2. Yandall was called as a witness and interrogated as to the declarations of Geo. R. Carradine. The court overruled the objection and permitted him to state what Carradine may have said at any time as to his intention in making the deed.

Carradine's declarations after making the deed cannot be received to impeach it. This point was directly decided in Osgood *v.* Manhattan Company, 3 Cow. 612. There the fact of Mrs. Osgood's insolvency, when she made the conveyance to her daughters, was afterwards admitted by her in the most unequivocal manner, but the evidence rejected.

Same point 5 John. 413, 426, the judge said, "a party making a deed cannot afterwards impeach it by any *ex post facto* act, or declaration." 20 John. 142. Frear was the plaintiff in the action but he had assigned the claim before he made the admission. The court said he could not impair the interest of his assignee by any confessions made after the assignment.

Arnold *v.* Bell, 1 Hay. 396–7, note. A father had conveyed negroes to his son, declarations afterwards made by the father were offered to impeach the conveyance. By the court: "it would be of dangerous consequence to allow such after declarations of a man who had passed property by the proper legal ceremonies; he might always overturn his conveyances."

The answer of one defendant in chancery cannot be read against his co-defendant, and the principle of that rule applies with much stronger force to loose admissions out of court. 1 Cain's C. in Error, 121. 2 Whea. 330.

I take it to be clear that the judge erred in laying the rule so broad as to admit the declarations of Carradine after he made the deed. And it is well settled that if only cumulative evidence be erroneously admitted, the judgment shall be reversed. For the court above will not undertake to say what effect it may have had. 3 Cow. 612. 16 John. 89.

3. Richard M. Corwine, the co-trustee, was offered as a witness. He released all powers, rights and claims whatsoever, under said deed of trust, and upon his voir dire, said he had no interest

[Ferriday *v.* Selser.]

whatever in the termination of the issue, nor had he **any** interest in the property in dispute by virtue of the deed of trust or otherwise.

What ground of objection could have been found in the court below to exclude this witness?

1 Star. E. 20–1, lays it down as more safe to admit the evidence where there is doubt, than to exclude it altogether; for on the one hand the rejection is peremptory and absolute; on the other if the witness be received, it is still for the jury to consider what credit is due to his testimony, taking into consideration all the circumstances of the case, and the motives by which he may have been influenced.

The interest to exclude a witness must be a present, certain, vested interest, and not uncertain or contingent.    1 Star. 103–4.

I need not refer to authorities that where such interest exists, it may be released.

4. Defendant (below) offered to read records of two judgments recovered by Eskridge *v.* Carradine, in February, '38, and a judgment in favor of Pierce, for Johnson against the same, at the same term, with the executions thereon, and to prove that the negroes in dispute were seized by the sheriff, and sold under said execution, which evidence was objected to and rejected by the court.

The defendant was a naked trustee, without any interest, and the property taken from him by the act of the law.    Whether he could have made out a good defence on this head or not, cannot now be known, as his evidence was stopped at the threshhold.—But surely he cannot be in a worse condition than an executor, who would not be chargeable if the goods were stolen from him. Fonb. E. 434–5; Southcoate's case, 4 Rep. 83–4; Furman *v.* Coe, 1 Cain. Cas. 96.

A trustee is never rendered personally responsible, unless for his wilful default. Fonb. E. 434; Osgood *v.* Franklin, 2 J. C. R.; 3 Vez. 566.

Story's Equity. 2d vol. 510, lays it down, that as a trustee takes the trust upon himself as a mere matter of honor, conscience, friendship, or humanity, and is not entitled to any compensation for his services, (1 J. C. R. 534,) he is only bound to

good faith and reasonable diligence, and, as in case of a gratuitous bailee, liable for only gross negligence.

Story, 513, 514, quotes the opinion of L. Hardwicke, that as a trust is an office necessary to the concerns of mankind, and if faithfully discharged is attended with no small degree of trouble and anxiety, to add hazard or risk to that trouble might be attended with manifest hardship, and deter every one from accepting so necessary an office.   See the cases cited.

It cannot be seen in this case (because the proof was stopt) whether Selser's execution or those under which the property was sold, were entitled to priority.   If the latter, it is clear beyond doubt that a court of equity would not saddle the trustee, acting in good faith, with the loss.   And the same rule applies in every day's practice at bar, as to executors, administrators, bailees, &c.   Thompson *v.* Brown, 4 J. C. R. 628–9.

5. The fifth exception presents the same question in substance as the second.

6. Defendant (Ferriday) offered in evidence four bonds, executed by George R. Carradine, as principal, with Henry F. Carradine and Richard M. Corwine securities, and M. T. Rodgers, as to three of them, conditioned for the delivery of property to be sold by the sheriff on execution, and for the prosecution of writs of error with effect.   These bonds were objected to, and rejected by the court, notwithstanding it was proved that these were the very bonds referred to in the deed of trust.

This question is absolutely too plain to admit of argument.   If a deed is impeached for fraud, it is incumbent on the party setting it up to prove the consideration.

Fraud is a question of fact for the jury.

If a party execute a deed in trust to pay certain debts and indemnify his sureties, he may surely be permitted to prove he owed the debts and gave the security.   How else can he establish his deed?   The court seems to have prejudged the fact in this case, and to have gone upon the ground that if all the evidence was heard it could not sustain the deed.   The judge erred in this. How could he tell what evidence the party might bring?   But no evidence either of release or payment could have availed any thing after the rejection of these bonds.

[Ferriday *v.* Selser.]

But why may not this deed be sustained?

If the writs of error vacated the liens of the judgments, and even the executions in favor of Eskridge and Pierce, then Carradine might make the deed; for nothing is better settled than that a man indebted even to insolvency may make such a deed as this, giving preference amongst his creditors.

In McMenomy *v.* Roosevelt, 3 J. C. R. 446, the deed was made on the 15th of April, conveying all the property in favor of preferred creditors, and showing a state of utter insolvency. Suits were pending and noticed for trial on 25th of March. Between the 19th of April and the 10th of May, nine judgments were docketed. This deed was sustained. Hendricks *v.* Robinson, 2 J. C. R. 306–7.

G. S. & J. S. Yerger for defendant in error.

1st. V. M. Subblett was offered as a juror. He was challenged for cause, by claimant, Ferriday. Subblett stated in answer to interrogations propounded to him, that he considered George R. Carradine insolvent—that if Carradine owed him, Subblett, it was in a small amount; but Subblett stated that he felt himself unfit to sit upon the trial of the cause, because the said Carradine was surety in a forthcoming bond, on a judgment against him, Subblett, and another person: he, Subblett, being a *surety* in the original judgment, which bond, he, Subblett, refused to sign, and that the principal in the original judgment was insolvent. The court decided Subblett was a competent juror, and he was challenged peremptorily by claimant, Ferriday.

The facts stated did not make Subblett incompetent. But Subblett did not sit on the jury, and the bill of exceptions does not show that claimant exhausted all his peremptory challenges. Hence the error of the court, if there were any, did not affect the cause. The error must be shown to be material. This point is expressly decided in McGowan *v.* State, 9 Yerger's Rep.

2d. The second bill of exceptions shows that Barton Yandel was called as a witness by Selser, and he was asked to state what conversation took place between George R. Carradine and Richard M. Corwine, a co-trustee with Ferriday, in the deed of trust as to the intent with which the deed of trust was made; and also

[Ferriday *v.* Selser.]

said witness was asked to state what declarations he heard said Carradine and R. M. Corwine make in the presence of each other, as to said Carradine's intention in making said deed of trust. To these questions the claimant objected, but the court overruled his objection, to which he excepted.

One answer, and a conclusive one, to this is, that the bill of exceptions does not show or state that the questions were answered by the witness, or if answered, how. The witness may have said he never heard any thing. It is incumbent on a party excepting, in such case, to set out the testimony, in order that the court may see he is injured—if it is answered one way, or not answered at all—it cannot harm the party—he must show the evidence was against him, in order to get the advantage of any error of the court in admitting it.

But the evidence was clearly admissible. Corwine was one of the parties to whom the deed was made. He was the agent and trustee of the creditors in the deed. His declarations and those of Carradine, were admissible to show the *quo animo* with which the deed was made. If Corwine, as trustee, had sold the property, then declarations made after the sale, would not be admissible. But a full and complete answer to this exception, is that first given.

3. The third exception, (*vide* page 13,) is that Richard M. Corwine was rejected as a witness. This bill of exceptions shows that Corwine was a co-trustee in the deed of trust. Corwine stated that he had no interest whatever in the termination of the issue, nor had he any in the property in dispute. The deed of trust is referred to in this exception, and is set out fully upon exception, at page 23 of the record. Corwine after his exclusion by the judge, executed a release, by which he released "all powers, rights and claims whatever, due to him in virtue of said deed of trust." The court still excluded him.

The court was correct in excluding him, although Corwine stated he had no interest in the termination of the issue, or in the property in dispute. This was merely his opinion; for the deed of trust shows on its face he had an interest directly in the event. The deed of trust on its face, shows that the property was conveyed in trust to secure said Corwine (the witness) a debt which Car-

radine owed him, and further to secure him against loss or liability for debts of Carradine, on which said Corwine was surety or responsible for.   (See pages 23, 25, 26.)

The deed being made to secure the debt due to Corwine himself, it is a self-evident proposition that he was directly interested in the issue; for, if the claimant, (Ferriday) who was the trustee, succeeded in the issue, or in other words, in sustaining the deed of trust, then Corwine's debt, and the debts upon which he was responsible, had first to be paid out of the property.   Hence, he was directly interested to support and uphold the deed of trust.   His interest is so direct, that argument to prove it would but weaken it.

Does his release to Ferriday alter the case?   The fact that the witness apprehends or believes that he is not interested, when in fact he is, will exclude him, for says Starkie "it would be dangerous to violate a general rule because the witness does not understand his responsibility." (1 Starkie's Ev. New Ed. top page 84.)

It is settled law that where the interest of a witness is such that he cannot release it, a release will not render him competent.

Starkie 1 vol. New Ed. top page 104, says, "where from the special nature of the case, the interest cannot be released, the witness will not be competent, though he execute it, &c. (see also, the notes to said page.)

Now Corwine releases all claims and interest, &c. to Ferriday. This release, so far as his own debt is concerned, releases it, and renders him competent.   But the provision in the deed of trust is also to secure the payment of the debts for which he, Corwine, was liable as surety, and the money arising from the sales is to be first applied to the payment of these debts.   This is a trust to secure these debts, and the trust may be enforced by the creditors. 1 John. R. 119; 3 Yerg. R. 257, and authorities there cited.

Now Corwine could not release or discharge the debts for which he was security.   The owner or creditor could only do that.   Nor could he release or in any wise impair the funds created for their payment.   His release therefore, did not, nor could not, operate to discharge these debts.   His interest then as to them, was precisely the same after the release, that it was before.   And if by his testimony he established the deed of trust, these debts would necessarily be paid, either wholly, or in part, by the fund, and he

consequently be discharged from liability.    His interest therefore, notwithstanding the release, is direct and positive.

4. The fourth bill of exceptions, (page 15,) states that claimant offered in evidence, a judgment obtained by William S. Eskridge against George R. Carradine, on 22d February, 1838, for $919 79; also another judgment, obtained 21st February, 1838, by said Eskridge *v.* said Carradine, for $1,637 50; also that Granville S. Pierce obtained a judgment on 19th February, 1838, against said Carradine, for $4,014 80.    He also offered in evidence the various returns on these executions.

The returns of the sheriff show that a number of the slaves in controversy, were levied on.    The levies afterwards appear to have been released by order of plaintiff's attorney.    See page 19.

Eskridge's first judgment was satisfied by sale of Carradine's property.    (See page 17.)    The return does not state what property, but it could not have been that levied on, for the levy was previously released.

The other judgment of Eskridge was paid by Ferriday, and he took an assignment of the judgment.    See page 18.

Pierce's judgment was satisfied by sale of Carradine's property. See page 16.

The claimant then offered to prove that the slaves levied on, were the same in controversy, that they were sold by the sheriff to the *highest bidder, to satisfy said executions.*    See page 21.

The whole of the above testimony was irrelevant.    The question was, whether the slaves belonged to the claimant or not.    He then proposes to prove that the sheriff sold them under the above executions *to the highest bidder.*    Who *was the highest bidder?* Why did not the highest bidder claim them.    If Mr. Ferriday had been the highest bidder, he would at once have offered to prove that.    He has no pretence of claim to the property under these executions, and whether the *"highest bidder,"* has, or has not any property in the negroes, is not the question in issue, and the evidence must be confined to the issue.    The rights of *third persons,* not before the court, are not in issue.    The claimant states in his bill of exceptions, (page 23,) " that he claims and asserts his right to the property now in controversy, by virtue of the deed of trust."

[Ferriday *v.* Selser.]

It would have been a useless waste of time for the court to examine whether other persons had any right.  But a conclusive answer to all is this : the execution was once levied, and this levy discharged by the plaintiff.  The execution was then *functus officio,* and could not be again levied, though another execution might.  2 Tucker's Commentary, 358.

5th.  The fifth exception is precisely like the second, and the like answer is given.

6th.  The claimant offered in evidence certain bonds, forthcoming bonds, and writ of error bonds, which were objected to and excluded.  The deed of trust says the money to arise from the sale of the property, shall be first applied to certain liabilities in the shape of *bonds,* and forthcoming bonds, which the said Corwine and one H. F. Carradine have assigned for him, and which are due and payable in October.  (See page 25.)

The court below is presumed to decide correctly, until the reverse is shown.  To make it error to exclude testimony, the bill of exceptions must show its relevancy.  If the deed in this case was attached for fraud, because debts were stated in it, that it was alleged did not exist, it is proper to prove these debts, but if you offer to prove them—to make such evidence admissible, you must show its relevancy, by putting in the bill of exceptions the facts that make it necessary to prove them, and without which, the evidence would be inadmissible.  Here the bill of exceptions merely offers to prove, that the bonds offered were the same as those described in the deed.  Now there is nothing to show that the other party pretended to say there was not such bonds as those mentioned in the deed.  The evidence without showing this fact was in dispute, was wholly inadmissible and unnecessary, and it is for the excepting party to show it.

Mr. Justice TROTTER delivered the opinion of the court.

The defendant in error obtained a judgment in the circuit court of Yazoo county, against one George R. Carradine and others, upon which an execution was issued, and was levied upon the slaves in controversy.  The plaintiff in error filed his claim to the slaves, in pursuance of the provisions of the statute, and an issue was afterwards made and tried in the same court, on the title to

[Ferriday *v.* Selser.]

that property.   There was a verdict for the plaintiff in the execution, and judgment rendered by the court accordingly.

The first error assigned, is the decision of the court below, that Valentine Subblett was a competent juror.   It appears from the bill of exceptions, that when Subblett was tendered to the court as a juror, he was asked on his *voir dire,* if George R. Carradine, the defendant in the execution, was not indebted to him, and if Carradine was not also insolvent, to which he replied, that if Carradine was indebted to him, it was in a small amount, that he was notoriously insolvent.   That he, Subblett, felt himself to be unfit to sit upon the trial.   That he, the juror, was contingently liable for the amount of a judgment on a forthcoming bond, against Carradine.   The counsel for the plaintiff in error thereupon challenged Subblett for this cause, but the court directed him to be sworn in chief.   He was then challenged peremptorily, and another juror put in his place.   It is an old and cherished maxim of the law, that jurors should be *omni exceptione majores.* They should be entirely exempt from every influence calculated to produce the slightest bias towards either party.   They should, in the emphatic language of the books, stand indifferent as they stand unsworn, and go into their box with no motive to find a verdict for the one litigant or the other, save a conscientious sense of duty and the paramount claims of justice.   Thus protected against the dangers of temptation, which man, in his imperfect condition in this life, can scarce hope to resist with success, juries may continue to command the confidence and inspire the respect which they are so well entitled to, in view of their purity and intelligence.   And the institution of trial by jury, thus shielded, may still boldly advance its unqualified claims to our homage as the most powerful and effectual bulwark of human rights.   It may justly be regarded as one of the most sacred of the duties of a court of justice to uphold this institution in its purity, and to guard it with vigilance against an exposure to the operation of causes, which must lessen its demands upon the public confidence, impair its usefulness, and doom it to degeneracy.   This great duty can only be discharged by a strict application of those salutary rules which the wisdom and experience of enlightened jurists have prescribed.   The cardinal maxim upon this subject is the

[Ferriday *v.* Selser.]

one which has been already noticed, that jurors must be superior to every just exception. If the influence of this rule be extended to the juror who was excepted in this case, it is difficult to conceive his right to a seat in the box to which by the decision of the court, he was admitted. He thought himself to be unfit, and gave as a reason the circumstances which might be supposed to exert a persuasive control over his judgment. His interests placed him in an attitude of hostility to the deed under which Ferriday claimed title to the slaves in dispute. In a case similar to this in principle, the juror was excluded. The Bank *v.* Smith, 19 J. R. 121. The juror was excluded because he was the endorser merely of a note which the Bank held, and might by possibility need indulgence. In another case it was deemed good ground of objection to a juror, that he was an underwriter on policies which might involve the same questions, that had arisen on the one under trial. The court say underwriters can hardly be proper jurors in cases where persons pursuing the same business are parties, 2 Caine, 133. Hence we take it that the juror in this case was evidently incompetent, and the court should have so decided.

It appears from the record, however, that when the juror was decided to be competent, Ferriday set him aside by a peremptory challenge. He did not therefore try the cause, and there is no exception to any one of the twelve jurors who found the verdict. We are therefore inclined to the opinion, that as the error complained of is not shown to have prejudiced the right of Ferriday in any way, that it is not a good reason for reversing the judgment. It is a general rule, that an appellate court will not set aside a judgment otherwise regular and proper, on account of a mistaken opinion of the inferior court, which is not shown to have influenced the final result. Thus the supreme court of Tennessee in the case of McGowan *v.* The State, 9 Yerger, 184, refused to set aside the verdict, where it appeared that the juror was set aside by a peremptory challenge, who should have been refused for cause which was shown. That case is in all respects like the one at bar, and a conclusive authority in support of the verdict and judgment in the court below.

It is assigned as a second ground for setting aside the judgment,

that the court permitted Yandall, a witness for the defendant in error, to prove the declaration of George R. Carradine, made *at any time,* as to his intention in making the deed in trust to Ferriday and Corwin. The foundation of this objection appears to be the license granted by the court to prove statements made by Carradine to impeach the deed after its execution. It is well settled that a party shall not be heard to impeach his own title after he has made a conveyance of it to a third person. It would be against every principle of sound policy, to suffer after declarations of a vendor to unsettle the title of his vendee, which has been acquired in good faith. It would be to sanction a fraud upon the vendee, by the turpitude of the vendor. 3 Cowen, 612; 1 Hay. 396. If then the record furnished any evidence that declarations of Carradine made after the deed, and affecting its validity were placed before the jury, it would clearly be error. But it is not shown what the witness who was introduced did prove. How then can this court determine the question?

A third assignment of error is the rejection of Richard M. Corwin, who was offered as a witness by Ferriday. Corwin was a co-trustee with Ferriday in the deed of trust. It recites that it was executed to secure a debt which Carradine owned Corwin, and also to indemnify him against losses on account of his liability, as surety for debts due from Carradine to other persons. Previous to his coming forward as a witness, Corwin released to Ferriday, the co-trustee, all his powers and rights as trustee, and his interest in the trust fund. This release could not render Corwin a competent witness. He was still a trustee, for he had no power to renounce the trust without the assent of the *cestui que trust,* or the permission of a court of equity. 3 Yerger, 257; 4 J. Ch. Rep. 138. He had an undoubted right to release his own debt, or his benefit on the collateral security furnished by the deed, but he could not relinquish the lien of the other creditors, or exonerate himself from the execution of the trust in their favor. *Ib.* We think this witness was properly rejected.

The fourth assignment of error is the rejection by the court of the record of certain judgments in favor of Eskridge and certain other persons against Carradine, with the executions which issued upon them, and the return of the sheriff showing a seizure and

[Ferriday *v.* Selser.]

sale of the slaves in controversy. We are wholly at a loss to perceive the materiality of this evidence under the issue in the cause. The only question before the jury was whether the title to the slaves had passed to Ferriday who claimed them. It is not intimated that he became the purchaser at the alleged sale under these executions. Nor is there any testimony in the record with which the proof rejected can claim any connexion.

The last error assigned, is that the court refused to permit the plaintiff in error to read to the jury the bonds for writs of error, and the forthcoming bonds recited in the deed of trust. That it was competent for the plaintiff to prove the consideration of the deed under which he claimed title, is evident, if the *bona fides* of the transfer was questioned by the plaintiff in the execution. The deed imports a good consideration on its face, and was certainly evidence of Ferriday's title, unless it was impeached by proof. But here again the ojection is met by the palpable fact, that none of the testimony in the cause offered by Selser, is stated, so that it is impossible for this court to decide whether the opinion of the court in rejecting these bonds was, or was not proper. The necessity or propriety of this proof is not perceived by any thing in the bill of exceptions. We are therefore not at liberty to decide that the court erred, upon the mere conjecture that there may have been proof on the other side, to which these bonds might have been applicable. We can indulge in no presumptions against the regularity of the proceedings below. The party who challenges the legality of the opinion of the inferior tribunals, must prove the error by the record.

Let the judgment be affirmed.