ILLINOIS CENTRAL RAILROAD COMPANY *v.* CHARLES GILL.

[40 South. Rep., 865.]

RAILROADS. *Master and servant. Injuries to servant.*

A railroad employe, called by his superior officer from his business of surfacing track and ordered, without warning of danger, to aid in unloading creosoted timbers from cars, wholly without the scope of business for which he was employed, can recover from the railroad company damages for the loss of an eye caused by getting creosote in it while obeying orders.

FROM the circuit court of Madison county.

HON. DAVID M. MILLER, Judge.

Gill, the appellee, was plaintiff in the court below; the railroad company, the appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

Suit for the loss of an eye, alleged to have been caused by creosote from timbers handled by the plaintiff in the service of the defendant railroad company. The plaintiff was in the employ of the railroad company, working on an extra gang engaged in manual labor on the roadbed, his duties being to lay crossties and rails and handle dirt and gravel; on the occasion of the injury complained of he was ordered by his superior agent, the section foreman, to assist in unloading creosoted bridge timbers; he had no knowledge of the injurious property of creosote, and was not warned by any of the agents of the company that creosote was injurious, if gotten into the eye. The declaration alleged that the railroad company was guilty of negligence in ordering plaintiff to depart from his regular line of duty, and enter upon a dangerous class of work, of the dangerous character of which he had no knowledge or warning; the injury was received by getting creosote from the timber into plaintiff's eye; and as a result

88 Miss.—27

his eye became so injured and inflamed that, although proper medical treatment was given it at a hospital, he lost his eye. Plaintiff's witnesses testified that there was no evidence of any injury to his eye before handling the creosote, and that after he got it in his eye he was forced to stop work and place himself under medical treatment. Defendant offered testimony tending to show that creosote was harmless, and that it could not have caused the injury for which the suit was brought.

*Mayes & Longstreet, J. B. Chrisman,* and *J. M. Dickinson,* for appellant.

The court takes judicial notice as a matter of law that there is no danger of poisoning or putting out the employes' eyes from unloading creosoted timber, and that when creosoted the danger, if any, was obvious and unconcealed. The compound with. which the timber is treated is not a proprietory or patented article. It has been used for about seventy-five years in Europe and in this country. It has been used for at least thirty years in Mississippi, and is being used on all railroads where timber is high-priced. Not only is it used by the railroads, but by the telegraph and telephone companies, as we all know, because timber treated in this way is practically indestructible.

We call attention to the fact that the judges may refresh their memory and inform their consciences from such sources as they may deem most trustworthy of such matters as are or should be common knowledge. *Jones* v. *United States,* 137 U. S., 202; *Nix* v. *Hidden,* 149 U. S., 304.

There was no direct testimony to sustain the cause of action unless the plaintiff's own account of his injury can be so considered. He is positive of one thing only, and that is that his eye was put out with creosote. How it got into his eye is another question, and he has given three different accounts in the three counts of his declaration as to how it occurred, which shows that neither one or the other can be relied on, for he either does not know or is unwilling to risk the truth.

The burden was on the plaintiff to establish the controlling facts of his case, to wit: the danger of unloading creosoted timbers and that the stuff got into his eye without any contributory negligence on his part.

Indeed, he must go further, and show that there was a probability that the work would result in injury without any fault of the employe, being concealed, before any such duty of the railroad to give warning to its employes can be established.

This suit was manifestly suggested by the *Price case,* in· 72 Miss., 862 (s.o., 18 South. Rep., 415). It is so clearly distinguishable that we·will not comment upon it, but content our selves with a brief extract from the decision which makes apparent the difference in two cases. In the first place, this case does not involve the principles invoked in that—that the company warrants the safety of its machinery and appliances. Moreover, in that case the plaintiff was a boy, and the danger was hid from him. Indeed, he was misled by being accustomed to cars of a different construction.

In this case the plaintiff is a man thirty-two years old, who had been at work for the company for over three years in the state of Louisiana, when all the world knows that in its swamps and over its waterways creosoted timbers are used. Indeed, they are in such demand by the railroad company and telegraph and telephone companies that they attract attention of all classes of people, and a ten-year-old boy almost at any place on the Illinois Central Railroad system can tell why they are so black and why they are used. Thousands of men handle them every day.

The point was made on demurrer that if there was danger it was obvious and required no warning, but the court overruled the cause assigned, and yet when the plaintiff asked his instruction, the jury were told that this condition was a necessary element for recovery. So far from the *Price case* being an authority for plaintiff, we claim it as an authority for the defendant.

*H. B. Greaves,* for appellee.

Counsel for appellant say in their brief that plaintiff gives several versions of how he got the creosote into his eye. Now, I submit to the court that plaintiff's testimony, both on first trial and on the last, is the same, and his narration of how the stuff got into his eye is always, whether related on the witness stand or to his physician, the same.

We all understand the law to be that every servant assumes the known and obvious and ordinary risks incident to his employment. That is perfectly manifest, otherwise one could not employ a domestic to chop kindling wood without instructing him that, perchance, a piece might fly up and put out his eye; but at the same time, while fully recognizing this rule, we note as a rule equally as common the fact that when the employer requires the servant to undertake the performance of a dangerous or extra hazardous work demanding caution and more than usual skill, the employer must give the employe proper instruction as to methods of executing the service to be performed. This I understand to be the elementary rule; but this rule is limited to this extent, that if the risk and danger to which the servant will be exposed in executing the service required of him are plainly apparent, so that there shall cease to be necessity for instruction or warning, the employer may remain silent, and leave the servant to avoid clearly seen danger by the reasonable use of his own faculties.

Therefore, even though handling timbers treated with creosote was incidentally a part of plaintiff's employment, his main or principal employment being to "serve track," as explained in the testimony to mean "shoveling dirt and gravel and laying crossties and rails—and here note, no crossties handled were ever treated with creosote—yet when it came to handling bridge timber, even if it was incidentally a part of plaintiff's job—if creosote is dangerous, and all the doctors say it is—it was, at least, the duty of appellant to warn appellee of the danger, and caution him not to get it in his eyes, and if lard oil, as testified by one of

defendant's witnesses, would relieve the pain and prevent injury, then it was their duty to so advise appellee, for certainly one who had never seen or heard of creosoted timbers would naturally suppose his employer would not put him to working about dangerous commodities without suggesting it might get into his eye and injure him.   He had a right to suppose it was harmless.

These remarks are applicable where an employe is working within the scope of his employment.

WHITFIELD, C. J., delivered the opinion of the court.

There are no errors of law which should cause a reversal of this case.    Indeed, learned counsel for appellant stresses chiefly the proposition that the verdict is wrong on the facts.    The plaintiff himself, and Williams, one of his witnesses, and two physicians, fully support the plaintiff's case.    The witness Williams shows that the night of the day plaintiff got the creosote in his eye he could not see at all, but "rolled and tumbled and hollered that night," and remained in that condition for two days.    There is no evidence that this condition of pain and suffering was manifest before this time.    It is true that the defendant had a number of expert witnesses whose testimony is quite positive.    But Dr. Bruns himself testifies positively that he would not swear that "commercial creosote used in treating timber would not put the eye out."    The business in which the plaintiff was engaged was surfacing the track, and he was called from this business, on this particular occasion, to help about unloading some bridge timber, no part of his business.    No instructions were given him as to the danger, or poisonous character, of creosote.    On this state of the record it was peculiarly a case for the determination of the jury, and we do not feel warranted in disturbing their finding.

*Affirmed.*