## CECIL LUMBER CO. *v*. McLEOD.

[85 South.  78, No. 21094.]

1. MASTER AND SERVANT. *Leaving cogwheels exposed held negligence.*
The master is guilty of negligence in failing to furnish the employee with a reasonably safe place in which to work where the revolving gear or cogwheels were left uninclosed and exposed at the roller bed, where the employee in performing his work was compelled to lean his body over the roller bed and was injured by the exposed cogwheel.

2. MASTER AND SERVANT. *Negligence in hiring incompetent servant defined.*
The master is guilty of culpable negligence where he knowingly employes an incompetent servant and places him in control of dangerous machinery and a coemployee is injured by the failure of the incompetent servant to stop the machinery when called upon by the coemployee in peril.

3. MASTER AND SERVANT. *Hiring deaf servant held negligence.*
Where the servant is incompetent on account of deafness, and it is his duty to start and stop dangerous machinery where his fellow employees are at work, and on account of such deafness he fails to act, which failure caused or contributed to the injury of the coemployee, the master is guilty of negligence in knowingly hiring and retaining such incompetent servant.

4. MASTER AND SERVANT. *Hiring incompetent servant unable to prevent injury held negligence.*
Employees in control of dangerous machinery, whose duty it is to start and stop it, owe a duty to their fellow employees working in close proximity with the same machinery to prevent injury to such coemployees when their perilous position is known to the employee in control and who has the opportunity to act; the master is guilty of negligence in konwingly employing an incompetent servant who is unable to act when a fellow servant is imperiled and injured, where such peril would have been know to a competent person.

5. TRIAL. *Statute relating to cure of erroneous instruction by failure to ask further instructions does not apply to instructions granted by court.*

> Though an instruction is technically erroneous and should not have been given, the error is not cured by appellant's failure to have the court instruct the jury to disregard a faulty count under Code 1906, section 777 (Hemingway's Code, section 560), as the statute has no application as to erroneous instruction granted by the court.

6. APPEAL AND ERROR. *Erroneous instruction held harmless.*

> The granting of an erroneous instruction for plaintiff was harmless, where it clearly appeared that no testimony was offered to the jury in support of the counts of the declaration to which it related, and it was reasonable to say that the jury was not misled or confused, within Supreme Court Rule 11 (72 S. vii), especially where the real issues were ppresented by other counts covered by instructions given.

APPEAL from circuit court of Pearl River County.
Hon. W. J. Cranford, Special Judge.

Action by James McLeod against the Cecil Lumber Company. Judgment for plaintiff, and defendant appeals, Affirmed.

*McDonald & Marshall,* for appellant.

It is submitted by the appellant that the granting of the first two instructions requested by the appellee in the court below so clearly constituted reversible error under the facts of this case and the previous decisions of this court, that the matter is not susceptible of serious debate.

While there was no evidence at all introduced below in substantiation of the charges of negligence of appellant embodied in the second count of appellee's declaration, and the only evidence that was introduced in the trial at all bearing upon the point, flatly negatived the charges of appellant's negligence as a proximate cause of the accident embodied in the third count of appellee's declaration, the learned court in these instructions, with emphasis, charged the jury that if the jury believed that the appellant "was guilty of any negligence as charged in the declaration which contributed in whole or in part to the

plaintiff's injury . . . it is the sworn duty of the jury to find for the plaintiff and assess his damages . ."

In other words, if the jury believed from the evidence, according to these instructions, that appellant had negligently "left one end of said shaft unsupported, which caused said shaft to play, or wobble while in motion" and this negligence caused, or contributed to the causes of the injury, it was the sworn duty of the jury to find for the plaintiff." And there was not a scintilla of proof to warrant the jury in finding that one end of the said shaft was unsupported, or that said shaft "played" or wobbled while in motion; or that said shaft had any part in the proximate causes of the injury to the appellee. According to these instructions, the jury was emphatically charged by the learned court that is was "the sworn duty of the jury to find for the plaintiff and assess his damages" if the jury believed that "said lever, on account of its defective condition, would not catch and hold, and could not be made to do so and such condition of the lever proximately caused or contributed to the causes of the accident." And all the testimony introduced below manifested that the lever functioned perfectly, and that its condition was not an element in the proximate causes of the accident.

Tomes of authority may be cited in condemnation of these instructions, but we feel that we need burden the court no further than to refer the court to case of *J. J. Newman Lumber Company* v. *Adolph Dantzler*, 117 Miss. 31, 64 So. 931.

Even in a case where the evidence sustains all the allegations of negligence contained in the declaration, and where the jury could easily refer to the declaration and ascertain therefrom the ground of action alleged, this court in the case of *Southern Railway Company* v. *Ganong*, 55 So. 355, said of the practice of drawing instructions in this manner: "By these instructions the jury was directed, in substance, to return a verdict in favor of appellee, if the evidence showed she was injured in the

49—122 Miss.

manner set out in the declaration. This was error. The
jury was entitled to have the law of the case, as given by
the court, written out in full in the instructions, To re-
quire the jury to resort to the pleadings in the case, to
patch up and piece out the instructions, is calculated to
confuse and mislead them. In many cases the pleading
set out the cause of action and the defense thereto with
such prolixity that it would be exceedingly difficult for
the jury, by reference to them to extract therefrom the
allegations sought to be incorporated in the instructions;
in fact, cases arise where one learned in the law would,
have much difficulty in so doing. It is manifest that in
such cases instructions so drawn, would be most prejudi-
cial to rights of the opposite party.''

The third instruction granted by the learned court be-
low at the request of the appellee is, we submit, mislead-
in and fatally erroneous. The appellee's action is not
pitched upon the theory that appellant furnished him with
an unsafe place in which to perform his work, but upon
the theory that his injury was proximately caused by a
negligent failure of appellee to guard certain machinery
with which the appellee was employed to work. As the
court will please observe, in this instruction the court
announces the abstract principle that the employer is re-
quired to furnish the employee with a reasonably safe
place in which to work, and then, departing from the an-
nouncement of abstract law, the learned court proceeds to
instruct the jury to find for the appellee if the jury believe
that the appellee's injury was proximately caused by a
negligent exposure of the cog wheels. The instruction, as-
serting an abstract proposition of law upon which the ac-
tion itself is not based, is misleading and erroneous es-
pecially as it is drawn. *New Orleans & Northeastern
Railroad Company* v. *Dorsey Williams,* 96 Miss. 375, 53
So. 691; *George W. Fairfield* v. *Louisville & Nashville
Railroad Company,* 94 Miss. 887, 48 So. 513; *McLeod
Lumber Company* v. *Anderson Mercantile Company,* 105

Miss. 498, 62 So. 274.   An instruction must follow the theory of the action.

We submit to the court this instruction, as granted, is altogether confusing and misleading, and that for the prejudice necessarily caused appellant by its being given the jury, the judgment appealed from should be reversed. The fourth instruction given to the jury by the learned trial court at the request of the appellee appears upon page 165 of the transcript of the record. It is earnestly submitted by the appellant that the giving of this instruction constituted gravely material error, and substantially prejudiced the appellant's right to a trial of the cause according to the law of Mississippi.

As the court will note from its perusal of this instruction, the trial court therein tells the jury that "it is the sworn duty of the jury." (Throughout, the instruction granted for the appellee hold before the juror's eyes an implied threat of everlasting punishment as a penalty for returning any verdict for the appellant.) If the jury should believe from the evidence that Ollie Jones, the lever operator, was deaf, and did not hear the appellee call out when involved in the gears on account of his deafness, and that the said Ollie Jones, because of said deafness, was not a competent employee to operate the lever, and that the appellant knew of his incompetence, or "by the exercise of the care and caution required of it," should have known of his incompetence; and that the accident was due in whole or in part to the incompetence of said lever operator.   That was all.

The instruction entirely eliminates from the jury consideration of the negligence of appellant as a criterion of liability upon his score. The uncontradicted proof showed that a deaf man was not incompetent to operate the lever; that the lever was not intended as a safety device at all; that it was not designed to protect from injury persons becoming involved in the gearing of the roller-bed; and that no one could be required reasonably to anticipate that

an employee in the mill would become so situated that alertness upon the part of the lever operator might be required to obviate injury to him. The criterion of appellant's liability upon this count could be only this: whether a reasonably prudent employer would have anticipated injury to others if the operation of the lever were entrusted to a partially deaf employee. Though there are few things that can be performed by those who are so unfortuate as to have their hearing inpaired as efficiently as these things could be performed by persons in full command of all five senses, the law does not bar the difficult of hearing from employment; nor does it make their employment negligence *per se;* the question is not whether the particular function in any given instance could be performed as efficiently and completely, by one whose hearing is partially impaired; nor yet whether the particular accident was caused by the impairment in the employee's hearing. The question of liability pivots upon the inquiry whether the employment of the partially deaf person was, as a fact negligence; that is whether a reasonably prudent person would have anticipated injury to another should a partially deaf person be employed in the particular capacity. This, the instruction completely ignores making the employment of a partially deaf person negligence *per se* regardless of whether an accident from the employmnt could reasonably have been anticipated. Likewise, the instruction ignores the appellant's defense, supported by uncontradicted proof, that the employment of Jones to operate the lever was not, under the facts of this case, negligence. *Yazoo & Mississippi Valley Railroad Company* v. *Bruce et al.* (Mississippi), 54 So. 241: "this instruction eliminated from the consideration of the jury appellant's defense that the employer had exercised due care on the occasion in question and consequently the granting thereof was fatal error." *Harrison* v. *Garner* (Mississippi), 70

So. 700: "A instruction eliminating a defense, properly supported by the testimony is erroneous." *Hooper* v. *Herring* (Mississippi), 70 So. 308: General instructions ignoring defenses are erroneous." *Reed* v. *Yazoo & Mississippi Valley Railroad Company,* 94 Miss. 639, 47 So. 670: "An instruction ignoring the effect of competent evidence is erroneous."

We submit that this instruction under the evidence adduced in the case at bar was repugnant to the holding of this court in all of these authorities. "Incompetency consists in qualities and characteristics calculated to cause reasonable apprehension that the admission to the service or the retention therein of the incompetent will or may imperil the safety of the other employees." This quotation, from 18 Ruling Case Law, at page 726, section 204, embodies a succinct and accurate statement of the law governing this issue.

It was appellant's defense under this issue, supported by uncontradicted proof, that under the facts of this case, a reasonably prudent being in appellant's position could not have reasonably anticipated that the employment of a partially deaf lever operator would imperil the safety of other employees in the mill, and that consequently such employment could not be charged against appellant as negligence. The instruction completely ignores this testimony and this defense; and makes appellant's employment of the lever operator negligence *per se,* if the operator's partially impaired hearing contributed to the aggravation, merely of the results of an unexpected occurrence, which perfectly competent testimony manifested could not have been reasonably anticipated by the appellant. This is one substantial and vital error in the instruction materially prejudicing appellant.

Omitting the requirement of a finding of negligence of appellant in employing Jones as the lever operator, as a criterion of appellant's liability, the instruction, under

the circumstances of the case at bar charges the jury that
it is the sworn duty of the jury to find for the appellee if
the jury should believe from the evidence the existence
of certain facts alone, specified by the court, which facts
are insufficient, in this case to warrant a verdict against
the appellant.   This, we submit, also makes the instruc-
tions erroneous beyond cure; although no other instruc-
tions could possibly cure the error in this case, because
this was the only instruction specifically bearing upon
the point. *Mahaffey Company* v. *Russel & Butler* (Miss-
issippi), 54 So. 945; *Yazoo & Mississippi Valley Railroad
Company* v. *Kelley* (Mississippi), 53 So. 779; *Easley* v.
*Alabama Great Southern Railroad Company,* 96 Miss. 396,
50 So. 491; *Hunnicutt* v. *Alabama Great Southern Rail-
road Company* (Mississippi), 50 So. 697; *Western Union
Telegraph Company* v. *Robertson* (Mississippi), — Miss.
—; *Yazoo & Mississippi Valley Railroad Company* v.
*Aden,* 106 Miss. 860, 64 So. 790; *Yazoo & Mississippi Val-
ley Railroad Company* v. *Dyer,* 102 Miss. 870, 49 So. 545;
*railroad Company* v. *Minor,* 69 Miss. 710.

"In a case of this character, it was particularly neces-
sary to the accomplishment of justice that there should
be no confusion or contradition in the instructions of the
court. *Mississippi Central Railroad Company* v. *Miller,*
40 Miss. 45; *Illinois Central Railroad Company* v. *Mc-
Gowan,* 92 Miss. 603, 46 So. 55; *Chapman* v. *Copeland,* 55
Miss. 476.

The jury being thus given no reasonably lucid and
definite announcement of the law by the court to govern
the jury's finding, or to aid the jury in intelligently form-
ing a verdict from the testimony, which alone is sufficient
to account for the most extraodinary verdict returned we
submit that the judgment appealed from should be re-
versed, and the cause remanded for trial upon proper
charges.

*Currie & Currie* and *Nall & Nall,* for appellee.

As a matter of the law the verdict and judgment in this case are good, free from any reversible error, and should be upheld and affirmed. First, there was no contributory negligence established under the special notice filed by the appellant; second, the proof in the case shows and the jury found that the appellee was at his place of duty, performing his labor in the proper manner when he was injured, and hence no contributory negligence can be laid to the appellee on the score that he negligently left his place of duty and labor which was safe and went to a dangerous place, where he was hurt.

But the appellant did not plead, nor did it prove that the negligence of the appellee was the sole cause of his injury. It merely pleaded and undertook to prove contributory negligence only. Mere contributory negligence, no matter how gross, is no bar to recovery. See sec. 502, Hemingway's Annotated Miss. Code, 1917. "All questions of negligence and contributory negligence shall be for the jury to determine." (Section 503, Hemingway's Code, 1917.)

All questions of negligence and contributory negligence which arose in the trial of this case were properly submitted to the jury, and were by it properly determined against the appellant.

Section 504, Hemingway's Annotated Mississippi. Code, 1917, abolishes the assumption of risk in this case. The negligence of the master having been shown to be the proximate and sole cause of the appellee's injury, or at least to have contributed to it, the appellee could not be held to have assumed any of the risks of his employment.

Section 777, Mississippi Code, 1906, being section 506, Hemingway's Annotated Mississippi Code, 1917, reads as follows: When there are several counts in the declaration, one of which is faulty, defendant may apply to the court to instruct the jury to disregard the faulty count; but if he

fail to do so, and entire damages ·be given, the verdict shall be good."

It is immaterial that the declaration contained two counts, the second and third, which were not supported by any proof and which were abandoned by the appellee, for under this statute the verdict being of entire damages, and the appellant having failed to apply to the court to instruct the jury to disregard the counts, which were not supported by any testimony, is now estopped to raise that question on appeal, and the statute by its own force refers the verdict and the whole record upon which it is based to the counts in the declaration which were supported by the testimony.

Not only is the verdict supported by our statute, but it is good upon the general doctrine of law on the point. "Although one or more of the counts in a declaration may be defective or insufficient, yet if it contains a good count it will support a general verdict for plaintiff, and a judgment rendered thereon will not be reversible." (23 Cyc., page 696. *Scott* v. *Peebles,* 2 Smedes & Marshall, page 546; *Roe* v. *Crutchfield,* 1 Hemming & Munford (Va.), 361.)

The statute of Jeofails is section 808 of the Code of 1906, section 777 of the Code of 1906, is as follows: "When there are several counts is the declaration one of which is faulty, defendant may apply to the court to instruct the jury to disregard the faulty count; but if he fail to do so, and entire damage, be given, the verdict shall be good."

It will be observed that each instruction the negligence for which recovery may be had is not only such negligence as is charged in the declaration but such negligence as contributed to the appellee's injury. The jury was charged in effect in these instructions that they must not only find the appellant guilty of negligence as charged in the declaration but that it must be such negligence as contributed to appellee's injury.

Counsel rely upon the case of *J. J. Newman Lumber Company* v. *Adolph Dantzler,* 64th So. 931. We submit that counsel are in error when they conclude that the Instruction which was regarded as objectionable in that case was indentical with the first and second instructions for the appellee in this case.

We submit that there is no error in the third instruction for the appellee. Counsel for appellant criticized the instruction because as they claim, "the action is not based upon the theory that appellant furnished him with an unsafe place in which to perform his work, but upon the theory that his injury was proximately caused by the negligent failure of appellant to guard certain machinery with which the appellee was employed to work." It is difficult to see how there is any conflict between the duty to furnish a safe place in which to work and the duty to guard the gears under the facts of this case. In this case the duty to furnish a safe place was in fact identical with the duty to guard the gears. Unler the facts in this record the failure of appellant to guard the gears, rendered the place where the appellee was required to work unsafe. If the gears had been guarded, according to the contentions of the appellee and according to the testimony of himself and his witnesses the appellee would have had a safe place in which to work.

According to the theory of the appellee the place was not safe because the gears were not guarded and in negligently failing to guard the gears the appellant necessarily failed to furnish the appellee safe place in which to work. It was not safe because the gears were exposed without any guard. The first instruction for the appellant clearly shows that the appellant adopted this theory of the case and instructed the jury in accordance with it this instruction for the appellant tells the jury that the law does not require the appellant to keep the gears absolutely safe or to guarantee the safety of its employees. It also tells the jury to find for the appellant "if the gears, considering their natural dangers and

the facts that employees could escape injury from them by the exercise of ordinary watchfullness and prudence, were reasonably safe." We submit that the law was properly placed before the jury in the appellee's Instructions and the latter part of the appellant's instruction is certainly a liberal charge of the law in favor of the appellant. It puts squarely before the jury the question as to whether the gears, considering their natural dangers and considering the fact that employees could escape from injury by the exercise of ordinary watchfulness, were reasonable safe. The Appellant's instructions place before the jury the question of negligence on the part of the appellant. We respectfully submit that the duty of the master to furnish his servant with reasonably safe tools, ways, means and appliances is so well established in Mississippi that it needs no argument. A clear announcement of this doctrine is stated by this court in the case of *Hope* v. *Natchez, etc., R. R. Co.,* 54 So. 369.

We find on page 369 of the opinion in this case the following: "It is the duty of the master to furnish his servant with reasonably safe tools and appliances with which to do his work and he is responsible to his servant for any injury received by the servant while himself in the exercise of due care, by reason of any defect in such tools and appliances of which the master knew, or by the exercise of reasonable care and diligence, could have known.

The opinion in this case then cites with approval the decision in the case of *White* v. *R. R. Co.,* 16 So. 248; *Kneale* v. *Dukate,* 46 So. 715. In this case we find this language: The ground of liability is the common-law duty of the appellee to provide safe machinery and appliances for its employees."

We refer the court to the case of *Knoale* v. *Lopez & Ducate,* 46 So. 715: "If the master knew, or by the exercise of reasonable diligence, ought to have known of the dangerous condition of the place where a servant was

required to work, he is liable for resulting injuries to the servant.''

In the body of this opinion it appears very clearly that the plaintiff was entitled to recover if the defendant knew, or by the exercise of reasonable diligence, ought to have known of the dangerous condition of the place in which the plaintiff was required to work. All of these questions were properly submitted to the jury and were found against the appellant. *Finkbine Lumber Co.* v. *Cunnningham*, 57 So. 916.

The case of the *N. O. & N. E. R. R.* v. *Dorsey Williams*, 53 So. 619, is an entirely different case. In that case the plaintiff sued because while carrying iron bars across tracks as directed by the foreman, he was struck by a car which was being switched in a negligent manner. This court held in that case that instruction to the jury that it was the duty of the defendant to furnish the plaintiff, Dorsey Williams, a reasonable safe place to work" was erroneous because the liability as given was ''by reason of negligence of the servants of appellant in switching its cars onto the track whereon the cars were standing and between which appellee attempted to pass and not by reason of any failure of appellant to furnish appellee with a safe place to work.'' It is manifest that there was nothing unsafe about the railroad yard in which the plaintiff was working and that he did not rely upon such a theory but that he relied upon positive acts of negligence in switching a car. The case of *Fairfield* v. *Louisville & Nashville R. R. Co.*, 48 So. 513, is entirely different from the present case.

In the present case one of the main issues in controversy was whether the place where the appellee was working was reasonably safe or not and it was certainly proper to charge the jury in regard to the duty of the appellant with respect to it. The case of *McLeod Lumber Company* v. *Anderson Mercantile Co.*, 62 So. 274, is wholly different from the present case.

The case of *Yazoo & Miss. Valley R. R. Co.* v. *Bruce,* 54
So. 241, is an entirely different case from the one in hand.
That was a suit for damages against a railroad company
for injuries at a crossing. The defendant pleaded not
guilty and filed a special notice of contributory negligence
The court instructed the jury that the only defense in the
case was contributory negligence. This instruction affirm-
atively eliminated the defense that the defendant had
exercised due care on the occasion in question. The
fourth instruction for the appellee does not eliminate any
defense. It leaves it to the jury to say whether the deaf
operator of the lever was competent or not and whether
the appellant knew or ought to have known whether he
was competent or not and whether such incompetency. if
it existed, contributed to the injury. It submits to the jury
squarely the question as to whether the operator was reas-
onably competent or not and whether the appellant was
negligent in respect to him. And the appellant admitted,
and the proof, its own shows that it knew that "Dummy"
was deaf at the time it hired him; it knew he was deaf
at the time it placed him in charge of said lever; and the
proof shows (the testimony of the appellee that the
special attention of the appellant had been called to the
incompetency of "Dummy" before the appellee was hurt
and that the appellant had promised to get another em-
ployee to operate this lever.

There is no error in this instruction in so far as the
criticism is concerned, that it submits to the jury for its
determination as a question of law the degree of care and
caution required of the appellant for three reasons:
(1) The proof in the case shows that the appellant knew
that Dummy was deaf at the time it hired him and placed
him in charge of the said lever; its special attention had
been called to his incompetency, and it had agreed to re-
place him with another employee, and afterwards kept
this deaf boy in charge of the lever, knowing his incom-
petency, which shows that the appellant exercised no

sort of care or caution; and (2) the instruction itself specifies in what the incompetency of Dummy consisted, that is deafness, if deafness rendered him incompetent; and (3) properly submitting to the determination of the jury that question, and the jury by its verdict found that he was incompetent and that the appellant knew it at the time it hired him; at the time it placed him in charge of this lever; that its attention was called to his incompetency after the time it put him in charge of the lever and before the appellee was injured, and that it kept him in charge of the lever after special notice of his incompetency. All of this was established by the proof in the case, and if the instructions were erroneous, under the facts, it is harmless error.

The case of *Harrison* v. *Garner* is not in point because in that case the instruction for the plaintiff eliminated certain defenses, from the consideration of the jury. the case of *Hooper* v. *Herring* is wholly different because in that case the instruction ignored certain defenses. The present instruction ignores no defense because it leaves the question of incompetency and knowledge entirely to the jury.

The case of *Reed* v. *Y. & M. V. R. R. Co.*, is not in point because in that case the insrtuction disregarded evidence of the defendant, which is certainly not true of the instruction now before the court.

The case of *Maffey Co.*, v. *Russel & Butler*, 54 So. 945, is entirely different from the case now before the court. This case holds that an instruction which attempts to detail the facts of a case upon which recovery may be had and which details insufficent facts to warrant liability is erroneous. The vice of such and instruction would of course be apparent because it would permit recovery in case where the evidence failed to establish liability.

The case of *Y. & M. V. R. R. Co.* v. *Kelly*, 53 So. 779, is not in point. In that case one of the instructions for the

plaintiff so charged the jury as to exclude from their consideration the defense that the injury may have been the result of an accident; however, in that case the court holds that the defect, if any, was cured by other instructions.

The case of *Easley* v. *A. G. S. R. R. Co.*, 50 So. 491, is entirely different from the present case. In the Easley case, it is simply held that an instruction must be based on the case before the court and not on fictitious facts. One of the instructions assumed that the plaintiff may have been injured by holding his arm out of the window of the train when there was no fact to warrant any such supposition. The instruction therefore submitted to the jury fictitious facts wholly outside the record.

In the case of *Honeycut* v. *A. G. S. R. R. Co.*, 50 So. 697, the instruction which was criticised was based on no facts in the record. It submitted to the jury the question as to whether the deceased went to sleep on the railroad track when there was no evidence to warrant such a theory.

The case of *Western Union Telegraph Co.* v. *Robertson*, 69 So. 680, merely holds, that an instruction should not be given where there is no evidence to substantiate the theroy contained in it. The same is true of *Y. & M. V. R. R. Co.*, v. *Aden*, 64 So. 790.

In the case of *Y. & M. R. R. Co.*, v. *Dyer*, 59 So. 937, the instructions assumed that a passenger was drunk to insensibility, which was not warranted by proof. In the case of *Hook* v. *Mills*, the instructions which were criticised were not based upon facts which were proved.

In the case of *R. R. Co.* v. *Minor*, the instruction which was criticised was erroneous as requiring too high a degree of care on the part of the railroad. It will be observed in all these cases that the instructions which were criticised were either based upon assumed or fictitious facts about which there was no evidence whatever or that they submitted to the jury some theory which the proof did not warrant.

We refer the court to the case of *Howe* v. *Railroad Co.,* 50 Miss. 178. We find the following language: *N. O. & G. N. Railroad Company* v. *Hughes,* 49 Miss. 258, decided at the last term, we accepted as the rule upon that subject, established by unbroken authority in England, and the courts of most of the  American  states that in such circumstances the master was not liable unless he was chargeable, in the first instance, with the want of reasonable, ordinary care in the selection of his servants, or continued them in service after notice as to their negligence or carelessness or it may be added after he ought to have known of their unfitness, and could have known by the use of due and reasonable diligence, or after actual notice.''

The case of *Ely & Beers* v. *Isaac Prouty & Company,* 200 Mass. 19, 85 N. E. 864, is directly in point. Beers, who spoke the English language, and one St. Hillare, who could not speak or understand the English language were put to work together at the same machine, and the operation of the machine required frequent stopping, cleaning and startling of it in the accomplishment of which directon to him from the superior was necessary.

In the case of the operation of this machinery Beers' fingers were caught in the machinery in such a way as to be fastened, but not injured, and the superior directed the helper, St. Hillare, who could neither speak nor understand the English language and whose duty it was to do so, to put the power off from the machinery, but St. Hillare, not knowing the situation and not understanding the directions because of his inability to understand the English language put the power on, started the machine and cut Beers' fingers off.

The question in the case was as to whether the inability of St. Hillare to understand and speak the English language rendered him incompetent. The court held that it did and in speaking directly upon the point, and the effect of such incompetency, said: ''Nor can it be said

that the plaintiff was not injured by this error. It is not open to argument that the defendant did not, or might not, in the exercise of reasonable care know of the inability of St. Hillare to speak the English language, and that English was the vernacular of the plaintiff. The very act of hiring must have furnished this information. There was also ground for the view that the plaintiff's injury resulted directly from the inability of St. Hillare to understand his orders. St. Hillare was the one whose position for work at the machine made him naturally the one to put the power on and off.

In the case at bar "Dummy" was the employee in charge of the lever and his particular duty was to put the power on and off, and the proof in the case is overwhelming that because of the inability of "Dummy" to hear, the appellee was ground up in this cog wheel or gear for at least one-half minute or a minute and almost to death. The appellee was really entitled under the law and facts to a peremptory instruction on the fourth count in his declaration.

In conculsion, we submit that the principles of law applicable to this case were properly submitted in the instructions granted by the court and that the instructions are not misleading, that they are not conflicting and that the negligence, gross-negligence, on the part of the appellant, directly causing the appellee to suffer his terrible pain, and terrible and irreparable injury is established with such conculsiveness as that the jury trying the case was helpless and powerless to deliver any verdict other than one for the appellee.

Holden, J., delivered the opinion of the court.

This is an appeal from a judgment for five thousand dollars recovered as damages for personal injuries received by the appellee while employed in appellant's saw-mill. The recovery is based upon two grounds, namely,

that the injury was caused by the negligent failure of the master to furnish a reasonably safe place in which to work, and that the culpable negligence of the master in knowingly employing an unfit and incompetent fellow servant caused or contributed to the injury of appellee. There were two other counts in the declaration charging negligence in the operation of the plan with a defective cogwheel line shaft, and that the master was negligent in operating the machinery with a defective control lever. These two counts, which are designated as the second and third counts of the declaration, were not sustained by the proof and were abandoned by the plaintiff. The injury occurred in the manner and under the circumstances following:

Situated in appellant's sawmill is what is termed as a "roller bed," the purpose of which device is to transfer lumber from one part of the mill to another. The "roller bed" consists of a table-like platform about forty feet in length, a few feet wide, and approximately thirty inches in height above the mill floor. At various intervals across the top of the "roller bed" are rollers, over which are propelled pieces of lumber traveling from the saws to the points at which the pieces are desired to be deposited in the mill. Some of the rollers are called "dead rollers." They revolve only when the lumber resting upon them moves, and are designed to faciliate the movement of the lumber by curtailing friction. Other rollers of the "bed," referred to as "live rollers," are revolved by power transmitted from the machinery of the mill. The "live rollers" perform the function of propelling the lumber along the "roller bed" to be dealt with at particular places as the circumstances require.

The power necessary to revolve the "live rollers" is transmitted to them from the engines of the plant by means of a horizontal transmission shaft, which runs along the length of the "roller bed," slightly lower than its top surface. Gears upon this shaft mesh with gears

by cogwheel connections, attached to the ends of the "live rollers," so that revolution of the shaft impels revolution of the rollers. Since the tops of the rollers project but slightly above the surface of the roller bed, the gearing of the transmission shaft and the rollers are somewhat below the "roller bed's" surface.

The movement of the "live rollers" was controlled by means of a lever operated by an employee in the mill (who in this case is alleged to have been incompetent); the employee being also under the duty of operating a "jump saw," located at a point about forty feet away from the point where the appellee was injured at the "roller bed." By manipulating the lever controlling the "live rollers" the operator could start, stop, or reverse the shaft and rollers, The operator could stop the movement of the rollers and cogwheels with the lever and reverse the motion of the shaft and cogs very quickly.

At one side of the "roller bed," near the end, there stood an "edger," or trimming machine, the platform of which adjoins the "roller bed" on that side. An endless chain, propelled by the same power that operated the "live rollers," traverses the "roller bed" some little distance from the platform of the "edger." The purpose of this chain was to transfer certain pieces of lumber that moved down the "roller bed" to the platform of the "edger." As a piece appropriate for the "edger" machine approached along the "roller bed," the operator of the "edger" presses his foot upon the spring that elevates the chain one and one-half inches above the "roller bed." An employee in the mill (who was the appellee) was under the duty to stand near the "roller bed," opposite the platform of the "edger," and, as a piece to be transferred to the "edger" platform passes, to catch one end of the piece and to throw or thrust this end of the piece from the "roller bed" to the "edger" platform, while the conveyor chain transfers the other end. It was while filling this position and performing his duty that the appellee received his injury.

At the point where the appellee was standing or lean-ing over for the purpose of shoving the lumber over to the "edger" platform, there was an exposed gearing or cogwheel revolving; and while he was performing the duty of his employment in shoving the lumber over, his body in a necessary leaning position, his overalls were caught in the cogwheel gearing and gradually drew his body into the cogs, which resulted in serious permanent injury to the private parts of his person. When his clothes were first caught in the cogs he began to cry a-loud to the employee named Jones, a negro boy, who was in charge of the controlling lever about forty feet away, to stop the machinery. Jones, whose back was to the appellee, was deaf and could not hear the call of ap-pellee. Other employees heard the loud appeals of ap-pellee, and one of them, who was about forty feet dis-tance away, ran to the appellee and attempted to pull him loose from the machinery before it had begun to act-ually crush his flesh, but, failing in the attempt this em-ployee went on then a distance of forty feet farther to where the deaf employee, Jones was in charge of the lever, brushed him aside, and quickly stopped and re-versed the machinery, releasing appellee and preventing further injury to him.

The appellant lumber company knew that the employee Jones was deaf when it hired him to fill the position at the jump saw and to control the lever which started, stopped, and reversed the revolving shaft and cogs. The testimony of the witnesses, as well as the physical facts in evidence, shows that the master failed to furnish the appellee with a reasonably safe place in which to work, in this, that the revolving gears or cogwheels were unin-closed and exposed at the point of the "roller bed" where the appellee was compelled to work and lean his body over in order to perform the duties of his employ-ment. This was a dangerous situation in which to place the employee, and the master was chargeable with neg-ligence, as decided by the jury.

The appellant urges a reversal of the judgment upon two grounds; First that the court erred in granting instructions 1 and 2 for the appellee, both of which contain the same alleged infirmity to be mentioned later; second, that it was error in granting instruction No. 4, for the appellee. We here set forth said instructions Nos. 1 and 4 granted the appellee.

No. 1: ''The court instructs the jury for the plaintiff that it is immaterial, as a matter of law, how the plaintiff was dressed or who reversed the live roller lever, if you believe from the evidence in the case the defendant was guilty of any negligence as charged in the declaration which contributed in whole or in part to the plaintiff's injury, if you believe from the evidence in the case the plaintiff was injured, it is the sworn duty of the jury to find for the plaintiff and assess his damages, if any, at such sum as you may believe from the evidence in the case a reasonable compensation to him for the injuries sustained on account of such negligence, not to exceed the amount sued for.''

Instruction No. 4: ''The court instructs the jury for the plaintiff that it was the duty of the defendant to furnish the plaintiff with reasonably competent and skilled fellow servants with whom to work, and if the jury believes from the evidence in the case the plaintiff's fellow servant Ollie Jones, or 'Dummy,' operated the live roller lever, and was deaf so that he could not hear the plaintiff when he was caught in said cogwheels and called out to said Jones to stop or reverse said rollers, if you believe the plaintiff was caught in said cogwheels and did call out to said Jones, and that the said Jones could not and did not hear plaintiff on account of deafness, and that the said Ollie Jones was not, on account of said deafness, a competent employee to do the particular work at which he was put by the defendant, that is, to operate said live roller lever, and that the defendant knew or could have known of said

incompetency by the exercise of the care and caution required of it, and that the plaintiff received his injuries, either in whole or in part, as a proximate and direct result of incompetency of said employee, if you believe he was incompetent, then it is the sworn duty of the jury to find for the plaintiff.''

Complaint is made of instruction No. 1 because it tells the jury that if they believe the appellant "was guilty of any negligence, as charged in the declaration, which contributed in whole or in part to the plaintiff's injury," it should find for the plaintiff, whereas the second and third counts of the declaration were not proved and were abandoned by the plaintiff.

We agree with counsel for the appellant that the instruction is technically erroneous and should not have been given. *Newman Lbr. Co.* v. *Dantzler,* 107 Miss. 31, 64 So. 931. The error of the instruction was not cured by failure of the appellant to have the court instruct the jury to disregard the faulty count under section 777, Code of 1906 (section 560, Hemingway's Code), because the statute has no application as to erroneous instructions granted by the court.

But we think the granting of the instruction was harmless error for several reasons. In the first place, it clearly appears that no testimony was offered to the jury in support of counts 2 and 3 of the declaration. Jurors are presumed to be men of ordinary intelligence, and we may safely assume that they did not consider or act upon counts 2 and 3 because they heard no proof supporting these counts. We think that it is reasonable to say that the jury was not misled or confused by this instruction. Rule 11 (72 So. vii). Furthermore, the real issues in the case were presented by counts 1 and 4, and were covered by the instructions given, which, taken as a whole, limited the issues to counts 1 and 4, and the jury must have so understood it. We are further convinced in this regard when it is considered that

the appellant received and used only one instruction on the issues presented which instruction narrowed the question of liability of appellant to the proposition as to whether the appellee was furnished a reasonably safe place in which to work. We here quote the instruction granted the appellant:

"The court instructs the jury that the law of Mississippi does not require the defendant to make or keep the gears in question absolutely safe, or to guarantee the safety of its employees working near said gears, and that the defendant is not liable for accidents to employees that could not reasonably have been expected or anticipated; the defendant being given the right by the law to expect its employees to use the faculties with which nature has endowed them for their self-preservation. If the gears, considering their natural dangers and the fact that employees could escape injury from them by the exercise of ordinary watchfulness and prudence, were reasonably safe, the jury should find its verdict for the defendant."

It is urged by the appellant that instruction No. 4, granted the appellee, is erroneous because it was not negligence on the part of the appellant to employ a deaf man to control and operate the lever, since he was competent to perform that duty, and that appellant was not bound to employ a servant in anticipation of an injury to the appellee by the machinery controlled by the deaf servant. In other words, it is contended that the master could not reasonably anticipate that this deaf servant would ever be called upon to stop the machinery when a fellow servant might be caught in it; that the deaf servant employed was competent to perform the duties for which he was hired; and that his failure to respond to the call of the injured fellow servant when in peril could not be reasonably anticipated, and therefore his employment was not culpable negligence.

We must disagree with the position taken by appellant in this respect. The master knowingly employed this incompetent servant and placed him in control of the operation of dangerous machinery where his fellow servants were employed. The duty of this deaf employee was to start, stop, and reverse the dangerous machinery where his fellow servants were at work, as well as to operate the jump saw.'' And while he was not specially charged with the duty of watching out for injuries that might be received by his fellow servants and to stop the machinery in order to prevent such injury, yet it must be inferred that, since he was placed in control of the lever which operated the dangerous shaft and cogwheels that injured the appellee, it was his duty to stop the machinery when called upon to do so by a fellow servant in peril. *Beers* v. *Prouty,* 200 Mass. 19, 85 N. E. 864, 20 L. R. A. (N. S.) 39, 128 Am. St. Rep. 374.

If the servant Jones in charge of the lever had not been incompetent on account of deafness, he could have heard the cry of appellee to stop the machinery and would have stopped it in time and prevented the injury when the appellee's overalls only were engaged in the cogs and before the cogs had reached his flesh. It will be remembered that another fellow servant, named Boothe, went a distance of forty feet to the appellee when he called, and attempted to pull him out of the machinery. At that time it appears there was no serious injury to appellee, and Boothe went on forty feet farther to the lever, shoved the deaf man aside and reversed the machinery, stopping it quickly. So it is plain that no substantial injury would have occurred in this case had the servant in charge of the lever been a competent man and responded to the call of the appellee when he first became in a perilous position.

The employment of this incompetent and unfit servant certainly increased the danger of injury further

than the work necessarily entailed; and the failure of
the incompetent servant to respond and prevent the in-
jury after the appellee was in peril contributed to the
actual injury, if it did not in fact wholly cause it. A
capable and competent employee in charge of such dan-
gerous machinery would have heard the call and pre-
vented the injury. The incompetent servant here was
placed at work with his back to the appellee, who was
at work at and with machinery exposed and manifestly
dangerous; being in charge of the lever controlling the
movement of this dangerous machinery, he was placed
in a position where he could not see appellee, and the
master knowing at the same time that he could not hear.
We think that the appellant under these circumstances
was negligent in the employment of this incompetent
servant, and that the injury resulted from or was con-
tributed to by such negligence.

In volume 3, section 1079, Mr. Labatt says:

"The obligations of a master to see that the servants
hired by him possess the qualifications mental, moral,
and physical, which will enable them to perform their
duties without exposing themselves and their coem-
ployees to greater dangers than the work necessarily
entails are, in their broad features, similar to the obli-
gations which are incumbent upon him with regard to
the other agencies of his business. . . . The hiring
or retention of a servant whose unfitness for his duties,
whether it arises from his want of skill, his physical
and mental qualities, or his bad habits, is known, actu-
ally or constructively, to the master, is culpable negli-
gence, for which the master must respond in damages to
any other servants who may suffer injury through that
unfitness."

The position taken by the appellant that the work
engaged in by the deaf employee imposed no duty upon
him to hear and respond to the call of a fellow servant
in peril, in our opinion, is not well taken in this case.

From the facts and circumstances shown in this case it is unquestionably true that the deaf servant, Jones, was under duty to stop the machinery as well as to start it by manipulating the lever. This duty was part of the service to be rendered by him in the work he was employed to do. It is true he did not cause the injury by any affirmative act on his part, but his omission to act when called upon, which would have prevented or minimized the injury, resulted in contributing to or increasing the injury to appellee. The incompetency of Jones defeated the last clear chance of the employee escaping after knowledge of peril, thus increasing the danger of injury beyond the ordinary hazards where competent coemployees are serving.

The duties of Jones, the deaf coemployee, required him to operate the "jump saw," and also to manipulate the lever controlling the stopping and starting of the rollers and cogs on the "roller bed" at which appellee worked. It was his duty to stop the revolving gearing and cogs when requested to do so by his coemployee working in close proximity to him, in order to prevent the injury or stop its further progress.

In 18 R. C. L. section 204, p. 726, the rule is stated as follows:

"Incompetency consists in qualities and characteristics calculated to cause reasonable apprehension that the admission to the service or the retention therein of the incompetent will or may imperil the safety of other employees. . . . It goes to reliability in all that is essential to make up a reasonably safe person, considering the nature of the work and the general safety of those who are required to associate with such person in the general employment. A competent man is a reliable man."

The appellee had the right to assume that the fellow servant employed to work with him and about him and in control of the dangerous machinery would not be lack-

ing in those attributes which would make him an ordinarily safe coworker. The appellee could act upon the theory that he would be free from the danger of the want of capacity of his fellow laborer to perform his duties when called upon to do so. 18 R. C. L. section 202, p. 725.

Employees in control of dangerous machinery owe a duty to prevent injury of their fellow employees when their perilous position is known and they have opportunity to act; and the master is guilty of negligence in knowingly employing an incompetent and unfit servant who is unable to act when the perilous position would be known to a competent person. It would be an unreasonable rule that would permit the master to knowingly employ a blind or deaf person and put him in charge of dangerous machinery with which a fellow worker is working and is injured on account of the incompetency of the "dummy" in failing to prevent an injury when called upon to do so by his fellow employee in peril.

In this case the deaf servant, Jones, was working but a few feet away from the appellee and was the only person in control of the lever, which, it is true, was not primarily designed as a safety device, but which should have been used to prevent the injury when it was known or should have been known by Jones if competent, and his failure to act was negligence chargeable to the master on account of his known unfitness to perform the duties for which he was employed, namely, to control and operate by starting and stopping, the revolving machinery which injured the appellee, and to operate a "jump saw" impelled by the same machinery, all in close proximity to the place where the appellee was injured.

The judgment of the lower court is affirmed.

*Affirmed.*

SMITH, C. J., (dissenting).

The alleged acts of negligence of the appellant on which the appellee claims to be entitled to recover are: First, leaving unguarded the cogs in which the appellee was caught and injured; and, second, employing an incompetent servant.

It appears from the evidence without conflict, that all of the cogs under the bed of rollers were guarded except the particular one by which the appellee was caught and injured, but the evidence was in sharp conflict as to whether or not these particular cogs were guarded; consequently that issue was necessarily submitted to the jury. It also appears from the evidence, without conflict, that the rollers were for the purpose of conveying the lumber, one board at a time, from the circular saw to a point near the "edger," and when it reached that point it was the duty of the appellee to assist in transferring the board from the rollers to the "edger." This duty in no way required the stopping of the rollers, and in so far as the appellee was concerned their motion might have been continuous.

Between the circular saw and the edger there was a button saw for the purpose of cutting the ends of the boards in proper shape for the "edger." This saw was operated by a man by the name of Jones, who was deaf. His duties required him to watch the boards as they came from the circular saw, and when any of them that needed trimming before being transferred to the "edger" reached the button saw to stop the rollers, thereby stopping the board, elevate the button saw, and cause it to cut off the end of the board. When this was done he would start the rollers again and the board would continue its journey to the "edger." In order properly to discharge his duties it was necessary for him to face the circular saw and to keep his eyes on the approaching board, and in order so to do his back would necessarily be towards the "edger." The lever controlled by him

was for the purpose of enabling him to start and stop the rollers so that he might cut off the ends of the boards before they reached the "edger," and was not intended as a device for the safety of the appellee; that being intended to be provided for by guarding the cogs, and but for the button saw it seems that this lever would have served no necessary purpose. Jones was thoroughly competent to run this button saw, and neither his nor the appellee's duties required any communication between them, and their co-operation in getting the boards to the "edger" was only such as has been hereinbefore set forth.

The appellee's fourth instruction permitted the jury to find for him, although the cogs in which he was caught were guarded, if they believed from the evidence that Jones was "deaf so that he could not hear the plaintiff when he was caught in said cog-wheels and called out to said Jones to stop or reverse said rollers," and "that the said Jones was not, on account of said deafness, a competent employee to do the particular work at which he was put by the defendant, that is, operate said live roller lever." This instruction should not have been given, for, as hereinbefore set forth, Jones was thoroughly competent to run the button saw—the only duty he was employed to discharge—and to operate the lever for that purpose, and the obligation of the master to his servants to employ only competent servants is limited to the employment of such as possess the qualifications necessary to enable them to perform their duties without exposing themselves and their fellow servants to greater dangers than the work necessarily entails. If the cogs were properly guarded, as this instruction assumes, then the appellant complied with its duty to the appellee in furnishing him a safe place to work, and it was not called on to provide for the stopping of the machinery in event he should be caught in the cogs without negligence on its part.

For the error in granting this instruction by Brother
SYKES and I are of the opinion that the judgment of the
court below should be reversed.