# Wilbe Lumber Co. *v.* Calhoun.

(Division B.   March 28, 1932.)

[140 So. 680.   No. 29878.]

Hilton & Hilton and May, Sanders, McLaurin & Byrd, all of Jackson, for appellant.

Wells, Jones, Wells & Lipscomb, of Jackson, and H. M. McIntosh, of Collins, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Simpson county to recover damages for an injury received by him while in the performance of his duties as an employee of appellant, which injury was alleged to have been caused by the negligence of the appellant in failing to furnish him a safe place to work and safe instrumentality with which to work. There was a trial resulting in a verdict and judgment in the sum of five thousand dollars. From that judgment appellant prosecutes this appeal.

Appellant operated a planing mill. Appellee was one of its employees operating a ripsaw. The ripsaw had no guard on it. While operating the machine the saw kicked a piece of timber back which struck appellee and broke his hip. Appellee claimed that the machine with the saw

unguarded was an unsafe and dangerous instrumentality. Upon that ground appellee claimed that appellant was liable for his injury.

Appellant defended the action upon these grounds: That appellee assumed the risk of the dangers of the unguarded saw; that the injury was caused by the negligence of appellee in attempting to perform his labors in an unsafe manner when a safe manner existed and was known to him; and that appellee's injury was caused by the negligence of a fellow servant. Appellant assigns and argues as errors the action of the court in refusing to direct a verdict in its favor, and in refusing other instructions requested by appellant, and in granting certain instructions to appellee, and in admitting certain evidence offered by appellee over appellant's objection.

Appellee was a young man, thirty-two years of age. He was employed by appellant in its planing mill to operate a saw commonly known as a ripsaw, which was the usual type of ripsaw. It was placed in the middle of a bench, which bench was about six feet long, three feet wide, and two and a half feet high; the saw was built into the bench and projected above the surface of the bench for a distance of about six inches, and was operated by an electric motor. The saw revolved toward the operator who placed the timber on the bench to be sawed; it was located in appellant's building in which were many other pieces of machinery. At the time of appellee's injury the planing mill was in full operation. The saw was handled in this manner—two men were placed at the saw, one feeding it the timber to be cut, who was commonly known as the feeder, and across from him on the opposite side of the bench another employee handled the lumber as it was cut; he stacked it and placed it at a place designated by appellant; this employee was called the tailer. Appellee was under the general supervision of appellant's foreman, Beeth. The saw had no guard on it to prevent the timber from kick-

ing back on the feeder. The evidence showed that such a guard would have prevented appellee's injury, and that prior to his injury the unguarded condition of the saw had been called to the attention of appellant's foreman and also its superintendent. The evidence further showed that some planing mills used guards on their ripsaws, while others did not, but tended to show that in recent years most of them used guards, and that the guards were usually purchased along with the ripsaws.

The evidence on behalf of appellant tended to show that, notwithstanding the lack of the guard, appellee, by the exercise of reasonable care, could have avoided the injury. It showed that the injury occurred in this manner: Appellee occupied a position at the end of the table in front of the saw, he was feeding pieces of timber to the saw for the purpose of cutting them into pieces of the required length; after having put one piece of timber through the saw he turned to pick up another from a stack nearby to feed it to the saw, and while so doing the piece of timber already in the saw, due to the vibration of the machine or some other cause, was caught by the blade of the saw and hurled back with terrific force against appellee, breaking his hip bone. The evidence further showed that this could not have occurred if the saw had been guarded. In other words, it was fairly inferable from the evidence that the ripsaw unguarded was a dangerous instrumentality. This was not a case, therefore, for a directed verdict in favor of appellant; the question of liability was clearly one for the jury. Brooks v. De Soto Oil Co., 100 Miss. 849, 57 So. 228, Ann. Cas. 1914A, 656; Cecil Lumber Co. v. McLeod, 122 Miss. 767, 85 So. 78, 11 A. L. R. 776; Continental Gin Co. v. Milbrat, 10 Ala. App. 351, 65 So. 424; Merritt v. Victoria Lumber Co., 111 La. 159, 35 So. 497, 499. The later case involved a ripsaw without a guard. The injury in that case took place much in the same manner as appellee's injury. The court in that case, in its opinion,

said, among other things: "The evidence satisfied the jury, as it does us, that a ripsaw of the character of the one that killed Merritt, to be safe should be equipped with a guard, and that Merritt would not have been killed had there been a guard on the machine."

Appellant's contention that appellee knew the danger of operating the saw without a guard, and therefore assumed the risk of it is without merit. The servant does not assume the risk of the negligence of the master in failing to furnish him a reasonably safe place to work, or a reasonably safe instrumentality with which to work. Murray v. Natchez Drug Co., 100 Miss. 260, 56 So. 330; Edwards v. Haynes-Walker Lumber Co., 113 Miss. 378, 74 So. 284. The risk that the servant assumes is the danger incident to the service which remains after the master has exercised reasonable care for the safety of the servant.

Appellant cannot escape liability because appellee's fellow servant, the tailer, may have, by his manner of performing his part of the work, contributed to appellee's injury. The fellow servant doctrine has no application in this case. If the saw had been guarded, the injury would not have occurred, notwithstanding the negligence of the fellow servant. The primary and proximate cause of appellee's injury was the failure of appellant to furnish the guard, and not the negligence of the fellow servant. It is the primary, absolute, and nondelegable duty of a master to furnish his servant with a safe place in which to work and suitable appliances and instrumentalities with which to work. Masonite Corporation v. R. H. Lochridge (Miss.), 140 So. 223 (not yet reported [in State reports]), and the cases therein cited. Appellant's failure to perform that duty was the controlling cause of appellee's injury, the negligence of the fellow servant being a mere resulting incident.

The law allowed each of the parties four peremptory challenges to the jury panel. Appellant exhausted its

peremptory challenges, but contends that it ought to have
been given five peremptory challenges for the following
reasons: One of appellee's attorneys was Mr. Sykes. He
had a contract of employment with appellee by the terms
of which he was to receive as his fee for his services in
this case a part of the recovery—therefore a contingent
fee. N. E. Bush, one of the jurors in the panel presented
to the parties, was related to Sykes by affinity. Mr.
Sykes was a second cousin to the wife of Bush. This
was shown on the voir dire examination of Bush. It
wasn't shown, however, whether Mrs. Bush was living
or dead, and, if dead, whether she left issue then surviv-
ing. Appellant, challenged Bush upon the ground of his
relationship to Mr. Sykes. The challenge was overruled
by the court; thereupon appellant challenged four jurors
peremptorily, including Bush. After doing so, appel-
lant requested the court to be permitted to exercise an-
other peremptory challenge upon the ground that Bush
ought to have been set aside because of the fact that
Mr. Sykes was a second cousin of his wife. This re-
quest was denied by the court. This action of the court
is assigned and argued by appellant as prejudicial error.

We leave undecided the question whether, if it had
been shown that the wife of the juror Bush had been liv-
ing at the time of the trial, the court erred in not setting
aside Bush for cause, and failing to do this whether the
court should have given appellant five peremptory chal-
lenges instead of four, for we have reached the conclu-
sion that the burden was upon the appellant to show that
Bush and the attorney Sykes were related by affinity at
the time of the trial. In other words, that either Mrs.
Bush was living at that time, or was dead and had left
issue then living. "If the marriage, on account of which
such relationship exists, be dissolved by death or other-
wise, the relationship, in contemplation of law, ceases
to exist, unless issue of such marriage survives." Crosby

v. State, 90 Fla. 381, 106 So. 741, 744; Miller v. State, 97 Ga. 653, 25 S. E. 366; State v. Shaw, 25 N. C. 532. Appellant in its attack upon Bush's qualifications as a juror stopped short of the requirements of law; it should have gone further and shown that the relation by affinity between Mr. Sykes and the juror existed at the time of the trial.

Appellant assigns and argues as error the giving of the following instruction for appellee: "The Court instructs the jury for the plaintiff that even though you should believe from the preponderance of the evidence in the case that the best and safest way to operate the machine in question was for the feeder of the machine to hold on to the timber being put through the machine until the tailer took hold of such timber, nevertheless, if it has been shown by a preponderance of the evidence that in the operation of the mill of the defendant it was the habit and custom known to the defendant or its foreman for the operator of said machine to operate the same by passing such timber through and by the saw and leaving the same to be then taken by the tailer and the defendant acquiesced in such custom and permitted this operator so to do, then in that event it did not constitute negligence on the part of the plaintiff to operate such machine in such usual and customary manner."

Appellant contends that the instruction incorrectly states the law as to the choice of ways; that it is in direct conflict with instruction No. 5 given appellant, and that in effect it told the jury that, if appellee negligently proceeded to do his work, and appellant knew that appellee had thus been negligent, such negligence of appellant rendered such procedure on the part of appellee non-negligence, and under such circumstances authorized a recovery by appellee, notwithstanding the fact that his sole negligence might and probably did cause his injury. Instruction No. 5, given for appellant, is in this language:

"You are further instructed for the defendant that if you believe from a preponderance of the evidence that the negligence of the tailerman, Mr. Murrah, in any manner whatsoever, was the sole cause of the accident, and the injuries, if any, then you must find for the defendant, as the defendant is not liable, under the law, for his negligence, if any."

We do not think the instruction is subject to any of the objections urged by appellant. Considered in connection with all the other instructions given, the instruction embodied correct principles of law.

Appellant urges that the following instruction given appellee is erroneous: "The Court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence in this case, that a rip saw, of the character and kind used at the time of the alleged injury of the plaintiff was dangerous and unsafe and same was known to defendant or should have been known by the defendant prior to the injury by a reasonable method of inspection, because of the fact that the saw was unprotected by a guard and you further believe from the evidence that there was at the time and before the injury on the market to be had at a reasonable cost, a guard in common use as a standard equipment that would prevent, minimize or reduce the danger and that the lack of said guard was the proximate cause of this injury, then you should find for the plaintiff and assess his damages at such sum as has been shown by a preponderance of the evidence to have been sustained by him."

The criticism of the instruction is that it narrows the question to be decided by the jury to the inquiry as to whether there were, on the market, ripsaws protected by guards that would prevent, or reduce, the danger, and appellant failed or neglected to purchase such a ripsaw. We do not think this instruction is subject to that criticism.

We are of opinion that the other questions assigned and argued are without merit, and are not sufficiently grave to call for a discussion by the court.

Affirmed.